ALISON J. MEYER, M.D.
5185 Edgewater Beach Road
Green Bay, Wisconsin 54311

       Plaintiff,

      v.                                     Case No.: 21-cv-1203

PREVEA CLINIC, INC.
2710 Executive Drive                         **JURY TRIAL DEMANDED**
Green Bay, Wisconsin 53404

       and

ST. VINCENT HOSPITAL OF THE
HOSPITAL SISTERS OF THE
THIRD ORDER OF ST. FRANCIS
835 South Van Buren Street
Green Bay, Wisconsin 53407

       Defendants

## COMPLAINT

      COMES NOW Plaintiff, Alison J. Meyer, M.D., by her counsel, WALCHESKE & LUZI, LLC, as and for a claim against Defendants, alleges and shows to the court as follows:

### JURISDICTION & VENUE

      1.     This court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as this case involves a federal question, under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e *et seq*. ("Title VII").

      2.     The unlawful employment practices of which Plaintiff complains occurred within the Eastern District of Wisconsin and therefore venue is proper in this District pursuant to 28 U.S.C.

§ 1391(b) and (c).

## PARTIES

3.      Plaintiff, Alison J. Meyer, M.D. ("Dr. Meyer"), is a female resident of the State of Wisconsin residing in Brown County with a post office address of 5185 Edgewater Beach Road, Green Bay, Wisconsin 54311.

4.      Dr. Meyer is a nationally-renowned, neurointerventional radiologist employed by Defendants and primarily working at Defendant St. Vincent Hospital of the Hospital Sisters of the Third Order of St. Francis. Dr. Meyer deals with life-or-death situations on a daily basis involving patients with aneurysms or strokes.

5.      Dr. Meyer is a physician in good standing at Defendants.

6.      Defendant Prevea Clinic, Inc. ("Prevea"), was, at all material times herein, a domestic corporation doing business in the State of Wisconsin with a principal office address of 2710 Executive Drive, Green Bay, Wisconsin 54304.

7.      Defendant Prevea is a health care provider organization that supplies physicians and other health care professionals to hospitals and clinics in more than eighty (80) locations across Northern, Eastern, and Western Wisconsin. Defendant Prevea employs over four thousand (4,000) employees.

8.      Defendant St. Vincent Hospital of the Hospital Sisters of the Third Order of St. Francis ("HSHS St. Vincent"), is a regional medical center in Green Bay, Wisconsin, offering a comprehensive array of health care services to northeast Wisconsin, including neurointerventional radiology. HSHS St. Vincent employs over two thousand (2,000) employees.

9.      Defendant HSHS St. Vincent planned to achieve Comprehensive Stroke Center certification and hired Dr. Meyer to serve as Medical Director of the Stroke Center to help

achieve that certification.

10.    Defendant Prevea jointly partners with six Hospital Sisters Health System (HSHS) hospitals across Wisconsin, including Defendant HSHS St. Vincent.

11.    Defendants jointly employ Dr. Meyer. Defendants regularly blur the lines in the roles they undertake for their collective employees. For instance, Larry Gille is simultaneously Vice President of Legal Affairs for HSHS Wisconsin Division, Associate General Counsel of HSHS, and Senior Vice President and General Counsel of Prevea.

12.    The close corporate connection between Defendants is also established by Defendant Prevea relying on Defendant HSHS St. Vincent for the significant employer function of peer review, and in Dr. Meyer's case, Defendant Prevea used Defendant HSHS St. Vincent's peer review exclusively.

13.    With regard to Dr. Meyer's employment with Defendant HSHS St. Vincent, a physician who enjoys hospital staff privileges, like Dr. Meyer, Defendant HSHS St. Vincent controls which facilities, equipment, instruments, and staff Dr. Meyer uses in providing medical care at Defendant HSHS St. Vincent.

14.    Defendant HSHS St. Vincent also dictates the scope of Dr. Meyer's duties and responsibilities for her patients and controls which medical procedures she is permitted to perform, determines her schedule for performing medical procedures, and prescribes the form, content, and deadlines of the documents that she is required to prepare for each patient.

15.    Additionally, Defendant HSHS St. Vincent is responsible for billing Dr. Meyer's patients and collecting their fees from them, Dr. Meyer admitted almost all of her patients to Defendant HSHS St. Vincent, and Dr. Meyer did not associate herself with other hospitals.

## GENERAL ALLEGATIONS

### Dr. Meyer's Employment with Defendants and Harassment by Drs. Alshahrouri and Kabbani

16.     In September 2018, Dr. Meyer started her employment with Defendants as a Physician specializing in Neuro-Interventionalist Radiology at Defendant Prevea, and also as the Medical Director of the Stroke Program at Defendant HSHS St. Vincent.

17.     During her employment with Defendants from November 2018 until present, Dr. Meyer works exclusively at Defendant HSHS St. Vincent Hospital in Green Bay, Wisconsin.

18.     During Dr. Meyer's employment with Defendants from November 2018 until present, Defendants, including but not limited to Dr. Manar Alshahrouri, a former pulmonologist in the ICU at HSHS St. Vincent Hospital, and Dr. Mohammed Kabbani, a former Prevea locums tenens interventional neurologist who provided coverage for Dr. Meyer during part of this time period, subjected her to numerous sexually abusive and hostile interactions, comments, and conduct.

19.     During Dr. Alshahrouri's employment with Defendants, Dr. Alshahrouri viewed his female employees as sources of romantic relationships. For example, Dr. Alshahrouri was married to and is since divorced from an employee of Defendants, was engaged to a different employee of Defendants, and now has been married to and is about to be divorced from a third employee of Defendants.

20.     Since the beginning of Dr. Meyer's employment with Defendants in November 2018, Dr. Alshahrouri took Dr. Meyer aside and told her that she should not change his medical orders as he saw this as undermining and inappropriate.

21.     Since the beginning of Dr. Meyer's employment with Defendants in November 2018, Dr. Alshahrouri threatened Dr. Meyer, telling her that he had been at Defendant HSHS St.

Vincent for seventeen (17) years, that he was well-connected, that he was good friends with the President and Chief Executive Officer of Prevea, Dr. Ashok Rai, and that he sat on multiple committees and boards, including the Medical Executive Committee ("MEC") and the Board of Directors. Dr. Alshahrouri told Dr. Meyer that his reputation was "set" and "impeccable," that Dr. Meyer was "new," and that she should, "watch herself."

22.     In May 2019 and while at work at Defendants, Dr. Alshahrouri verbally screamed at Dr. Meyer after she sent her Physician Assistant to talk to him about space issues in the ICU for stroke patients. Dr. Alshahrouri told Dr. Meyer that her stroke system was broken. That same day, when Dr. Meyer sought to resolve the situation, Dr. Alshahrouri gave her an unwanted hug and wet kiss on the cheek in the middle of the Emergency Room. Dr. Alshahrouri whispered in Dr. Meyer's ear that he had treated her terribly and wanted to know what he could do for her.

23.     On July 13, 2019, Dr. Meyer had urgent back surgery and was given eight (8) weeks of short-term disability leave from Defendants.

24.     While Dr. Meyer was off of work at Defendants from approximately July 2019 to September 2019 because of her back surgery and subsequent recovery, Dr. Kabbani provided locum tenens coverage for Dr. Meyer.

25.     While Dr. Meyer was off of work at Defendants from approximately July 2019 to September 2019 because of her back surgery and subsequent recovery, Dr. Kabbani refused to perform Dr. Meyer's role as instructed by Dr. Meyer and/or Defendants.

26.     In August 2019, Dr. Kabbani complained about the work duties he was being asked to perform by Dr. Meyer and/or Defendants. For instance, he complained about the "stroke codes," which were directed to his phone, as being too burdensome.

27.     Despite these issues, and in August 2019 or September 2019, Dr. Rai interviewed Dr. Kabbani to be Dr. Meyer's partner prior to her return from medical leave. Dr. Meyer reminded Dr. Rai that she was to be involved in any hire for a partner and that she had real concerns about Dr. Kabbani and his training.

28.     In or about July or August of 2019, while Dr. Meyer was on leave for back surgery, she was asked to look at a patient's chart and review the management to make recommendations by the stroke coordinator and her administrator. Dr. Meyer reached out to Dr. Alshahrouri because she needed to transfer the patient for appropriate ICU level care. When reached, Dr. Alshahrouri lectured Dr. Meyer that she was off-duty and not to involve herself with the patient's care.

29.     Dr. Meyer reached back out to Prevea risk management and the Chief Medical Officer to be sure that she was permitted to assist with this patient's care. Both risk management and the Chief Medical Officer assured Dr. Meyer there was no violation. During this same time, Dr. Alshahrouri sent Dr. Meyer Manar an email threatening her with legal and MEC action.

30.     On September 13, 2019, before she returned to work, Dr. Meyer spoke with Dr. Richard Cooley, the then-Chief Physician Executive at the HSHS St. Vincent, regarding her fears of returning to work and having to work with Dr. Alshahrouri because of his threats against her.

31.     Dr. Cooley assured Dr. Meyer that she should fear nothing in reprisal and that Dr. Meyer had done nothing wrong and that no employee should work in fear. Dr. Cooley also stated that Dr. Meyer was an exemplary physician with an outstanding record.

32.     Subsequent to September 13, 2019, Dr. Cooley did not communicate with Dr. Alshahrouri regarding the issues Dr. Meyer communicated to him (Dr. Cooley) regarding Dr. Alshahrouri on September 13, 2019.

33. During Dr. Meyer's employment with Defendants, Dr. Alshahrouri frequently threatened to use his power to punish Dr. Meyer, and other female physicians at Defendant HSHS St. Vincent, thereby transforming his sex-based hostility into unfounded claims about medical care that could damage Dr. Meyer's standing at Defendant HSHS St. Vincent and her career.

34. Upon Dr. Meyer's return to work at Defendants from back surgery, the need for Dr. Kabbani's locums tenens coverage for Dr. Meyer remained at one week per month.

35. Upon Dr. Meyer's return to work at Defendants from back surgery, Dr. Kabbani became increasingly disgruntled and hostile towards Dr. Meyer.

36. In approximately the fall of 2019, Dr. Meyer became aware from numerous members of Defendant HSHS St. Vincent's staff that Dr. Alshahrouri had started a campaign against Dr. Meyer to try to discredit her clinically and medically.

37. On September 17, 2019, Dr. Alshahrouri told Dr. Meyer that his then-current girlfriend, a physician, told him that he was not being fair to Dr. Meyer. As Dr. Alshahrouri told Dr. Meyer this, Dr. Alshahrouri unwelcomely patted her shoulder and gave her another unwanted hug.

38. In October 2019, Dr. Kabbani complained bitterly in the Emergency Department about Defendant HSHS St. Vincent's imaging protocols. Dr. Kabbani lectured the physicians that these protocols were unnecessary and allegedly harmful to patients.

39. On November 12, 2019, there was a strategic meeting for the Neurology and Stroke programs with the heads of Defendants present. It turned out to be a meeting for Dr. Alshahrouri to voice his complaints about Dr. Meyer.

40.     Although those present were asked to discuss their thoughts on the Stroke Program and things that needed improvement for five minutes a piece, Dr. Alshahrouri spent five minutes in front of the physician and administrative leadership of Defendants ranting about Dr. Meyer's care of her patients and her lack of communication. Dr. Alshahrouri stated that Dr. Meyer was a detriment to patient care. Dr. Meyer was humiliated but did not respond.

41.     In approximately November 2019, Dr. Meyer wrote an email to Dr. Laura Nelson, Vice President and Chief Medical Officer of Defendant Prevea, stating that Dr. Alshahrouri had threatened her with action from the MEC and the Board of Directors on which he sits. Thereafter, Dr. Nelson, on multiple occasions, commiserated with Dr. Meyer about Dr. Alshahrouri's harassing and discriminatory behavior towards her.

42.     In approximately the fall of 2019, Dr. Alshahrouri continued to treat Dr. Meyer with hostility because of her sex even though Dr. Meyer has expertise and experience Dr. Alshahrouri did not have in the area of neurointerventional radiology. Indeed, in issues more aligned with Dr. Meyer's specialty, Dr. Alshahrouri frequently placed his knowledge above Dr. Meyer's, and took the word of male physicians over Dr. Meyer's.

43.     In approximately the fall of 2019, Dr. Alshahrouri undermined Dr. Meyer's credibility, authority, and Defendants' ability to provide appropriate high-level care for stroke and aneurysm patients.

44.     On November 12, 2019, during a Steering Committee meeting, Dr. Alshahrouri stated that the Stroke Program would never work with Dr. Meyer in charge because he felt she was difficult to work with and allegedly detrimental to patient care.

45.     At the end of November 2019, Dr. Alshahrouri, after a disagreement with Dr. Meyer on how to treat a patient, threatened to report Dr. Meyer to the MEC for unbecoming

behavior because she had questioned his opinion about treatment. At the same time, other medical colleagues were telling Dr. Meyer that her work was exemplary and how lucky they felt to have her on staff at Defendants.

46.     In November 2019, Dr. Meyer spoke with Dr. Stephanie Bakey, Head of Trauma at Defendants. Dr. Meyer and Dr. Bakey discussed how they were discriminated against by Dr. Alshahrouri in the ICU. Dr. Bakey stated that she had discussed with Defendant Prevea's executives Dr. Alshahrouri's discriminatory, unprofessional, and abusive behavior toward female physicians and staff, but Defendant Prevea refused to take any action against Dr. Alshahrouri.

47.     In November 2019, Dr. Bakey also discussed with Dr. Meyer how Dr. Alshahrouri retaliated against her for complaining about his sex discrimination against her, specifically Dr. Alshahrouri requiring Dr. Bakey to appear before the MEC to defend herself about a procedure she had performed. Dr. Bakey's treatment by Dr. Alsharouri was corroborated by another Defendant Prevea female physician, Dr. Karen Nelson. This treatment by Dr. Alshahrouri of Dr. Bakey occurred throughout Dr. Bakey's first two (2) years of employment with Defendants, which were the two (2) years prior to Dr. Meyer's starting at Defendants.

48.     In November 2019, Dr. Meyer learned that another female GI doctor at Defendants, Dr. Lee, had previously left Defendants' employ because of Dr. Alshahrouri's sexually abusive behavior towards her. As a result of this incident with Dr. Lee, however, no follow-up or monitoring was required or conducted by Defendants regarding Dr. Alshahrouri.

49.     In December 2019, upon Dr. Meyer's return from vacation, she had to calm and reassure Defendants' employees working in the Emergency Room, her staff, the ICU, radiology, and the stroke floor regarding Dr. Kabbani's continued (and false) belief that he knew how such Stroke Programs were supposed to be run.

50.     In December 2019, another doctor told Dr. Meyer that Dr. Alshahrouri was seen in the Radiology reading room at Defendant HSHS St. Vincent asking for cases on which to investigate Dr. Meyer.

**Dr. Meyer's Internal Discrimination Complaint and Incompetent Internal Investigation**

51.     Dr. Meyer felt that as things escalated, she reached out to the people that were in place at Defendants to ensure that these sexually harassing and discriminatory things did not happen to female physicians like herself by a male physician like Dr. Alshahrouri. Because Defendants did not respond effectively, Dr. Meyer felt she had no choice but to file a complaint in early December.

52.     On December 2, 2019, Dr. Meyer formally complained to Dr. Nelson regarding Dr. Alshahrouri's discrimination and harassment of her. Dr. Nelson acknowledged that many female physicians had been discriminated against and harassed by Dr. Alshahrouri, including herself, yet Dr. Nelson told Dr. Meyer that she was the first to make an official complaint against Dr. Alshahrouri (which was not true).

53.     In December 2019, Dr. Meyer then had two (2) meetings with Mr. Gille, and Samantha Tonn, Senior VP of Human Resources and Risk Management of Defendant Prevea. On December 17, 2019, and as a result of these meetings, Dr. Meyer wrote a statement to Defendant Prevea outlining Dr. Alshahrouri's sexual discriminatory and harassing conduct towards her.

54.     Dr. Meyer's statement of discrimination and harassment to Defendant Prevea explained that Dr. Alshahrouri frequently criticized Dr. Meyer and her work in a sexually hostile manner. Dr. Alshahrouri based his criticisms of Dr. Meyer on sex stereotypes that male doctors were superior to female doctors. Dr. Meyer explained that Dr. Alshahrouri repeated these same

criticisms to Defendant HSHS St. Vincent colleagues and staff and encouraged their criticism and hostility toward Dr. Meyer.

55.     By December 20, 2019, Defendant Prevea was aware of at least three (3) female physicians who had been the victims of Dr. Alshahrouri's sex-based harassment within the past three (3) years: Dr. Lee, Dr. Bakey, and Dr. Meyer.

56.     Defendants' internal human resources investigation of Dr. Meyer's complaint in December 2019 was carried out in a biased and incompetent fashion by Mr. Gille and Ms. Tonn. For instance, on December 30, 2019, Mr. Gille informed Dr. Alshahrouri in a private phone call, external to the investigation, that he did not think it was "necessary for [Dr. Alshahrouri] to look for a new job as it appears that this situation could be rectified with assistance and commitment of the parties," suggesting that Dr. Meyer was somehow also to blame for the sex-based discrimination and harassment she suffered.

57.     At the end of Defendants internal investigation into Dr. Meyer's complaint, Mr. Gille and Ms. Tonn provided a summary of the investigation to Dr. Rai that: (1) dismissed the claims of gender bias; (2) did not mention the fact that the interviews revealed a third female physician whose time at Defendants was "hell" because of Dr. Alshahrouri; (3) presented an inappropriate quantitative analysis of responses ("most" "some" "many"); and (4) mimicked Dr. Alshahrouri's suggestions to Mr. Gille regarding the nature of the situation and possible remedies.

58.     Regarding Defendants' internal investigation into Dr. Meyer's complaint in December 2019, Mr. Gille did not make any mention of his December 30, 2019, phone call with Dr. Alshahrouri in his summary report to Dr. Rai.

59.     Regarding Defendants' internal investigation into Dr. Meyer's complaint in December 2019, Dr. Alshahrouri was allowed to add names to the interview list for the internal investigation into Dr. Meyer's December 2019 Complaint, and three (3) of the interviewees claimed either a friendship with Dr. Alshahrouri or a positive stance, thus skewing the summary counts of the responses.

60.     Regarding Defendants' internal investigation into Dr. Meyer's complaint in December 2019, Mr. Gille was an unreliable and biased investigator because he: (1) had no specific training in conducting investigations of workplace discrimination; (2) had an inappropriate private phone conversation with the subject of the complaint, Dr. Alshahrouri, in which he exhibited an over-friendly disposition towards him; (3) shared information and opinions he should not have with Dr. Alshahrouri; (4) presented to Dr. Alshahrouri a likely outcome of the investigation before it was complete; and (5) stated a desire to mollify Dr. Alshahrouri's claimed anxiety.

61.     The summary memo written by Mr. Gille and Ms. Tonn in December 2019 regarding Defendants' internal investigation into Dr. Meyer's complaint ignores numerous statements that support claims that Dr. Alshahrouri treats female physicians much worse than he treats males. Not only does it not include these statements in the summary, but Defendant Prevea should have followed-up these statements with additional questions or interviews.

62.     As of at least December 2019, Ms. Tonn was aware that other females that have left employment over the treatment of women at Defendants by Dr. Alshahrouri, but she presided over meetings with some of these other women where these complaints has been brought to Ms. Tonn's attention and stated, "it was all in the female physicians' minds that this abuse occurred."

63.     Regarding Dr. Meyer's complaint in December 2019, an anonymous caller's statement to the internal human resources investigation presented a first-hand account of gender-biased, abusive behavior on the part of Dr. Alshahrouri: he yelled and screamed at her, then later apologized by putting his arm around her and "stating things like 'I love you, you know.'" This sex-based harassing and abusive treatment is almost identical to the conduct that Dr. Meyer suffered at the hands of Dr. Alshahrouri.

64.     On January 6, 2020, Dr. Meyer met with Dr. Rai, Ms. Tonn, Mr. Gille, and Dr. Nelson.

65.     During the January 6, 2020 meeting, Dr. Rai, Ms. Tonn, Mr. Gille, and Dr. Nelson told Dr. Meyer that Dr. Alshahrouri had been placed on administrative leave.  After being given the option to resign his employment or return after going through a behavioral modification program, Dr. Alshahrouri chose the latter.

66.     The behavioral modification program was handled by Dr. Alshahrouri's friend on Defendant HSHS St. Vincent's Board of Directors, Betsy Mitchell. Dr. Meyer did not know until later that Ms. Mitchell and Dr. Alshahrouri sat on the Board of Directors together for three (3) years.

67.     Even after the internal finding against him in early 2020, which did not include a finding of sex discrimination or sexual harassment, Dr. Alshahrouri continued to hold positions of power at Defendants, while at the same time exhibiting the same type of sex-based discriminatory and harassing behavior towards Dr. Meyer and other female physicians.

68.     Subsequent to January 2020, Dr. Alshahrouri retaliated against Dr. Meyer by refusing to treat her patients in the ICU through the pulmonary critical care unit. Dr. Meyer had to admit her patients into the ICU through Dr. Bakey's trauma unit.

69.     Subsequent to January 2020, Dr. Kabbani continued his disruptive and sex-based harassing behavior towards Dr. Meyer in the workplace at Defendants.

70.     In January 2020, Dr. Kabbani yelled in the Stroke unit that treatment of one of the cases was handled poorly and that he would not involve himself in the care because he thought there should be a lawsuit.

71.     In January 2020, Dr. Kabbani yelled and berated Dr. Meyer's angio tech team to the point that two (2) members left the team. Dr. Meyer argued with Defendant HSHS St. Vincent's leadership that she would rather shut down the Stroke Program when she needed to take time off rather than have Dr. Kabbani cover for her. Defendant HSHS St. Vincent leadership did not respond to Dr. Meyer.

### Sham Peer Review Brought Against Dr. Meyer By Drs. Alshahrouri and Kabbani

72.     Subsequent to January 2020, Defendants' behavioral modification program implemented for Dr. Alshahrouri did not deter or stop his sex-based discriminatory and harassing treatment towards Dr. Meyer, but rather escalated his retaliation against her with the help of Dr. Kabbani, causing four (4) of her cases to be subjected to a sham peer review process.

73.     The sham peer review process against Dr. Meyer started in November 2019 and continued through January 2020, without notice to Dr. Meyer and without her participation. Notably, Dr. Meyer was never once asked about these four (4) cases in a collaborative manner, as is the usual and customary practice for peer review.

74.     Dr. Meyer did not know of the existence of this sham peer review until April 16, 2020, the day she was suspended by Defendant HSHS St. Vincent's MEC based on these peer reviews.

75.     On April 22, 2020, Dr. Meyer notified Defendants that Dr. Meyer believed that this peer review was initiated for retaliatory reasons by Dr. Alshahrouri. Rather than consider whether these peer reviews were retaliatory in nature as Dr. Meyer maintained from the beginning of the peer review process, Defendants refused to consider the genesis of Dr. Alshahrouri's claims.

76.     Dr. Alsharouri filed at least peer review against Dr. Meyer in November 2019 and solicited three (3) others.  Although Dr. Alshahrouri's name only appears on one case review, at least two (2) others were brought at his urging by Dr. Kabbani, as shown in the internal human resources investigation notes into Dr. Meyer's December 2019 complaint. Indeed, Defendant Prevea's own internal investigation established that Dr. Alshahrouri admitted that he was the one who submitted three (3) cases for peer review in November 2019 and December 2019.

77.     In the year 2019, Dr. Cooley "looked around" for a person to bring a fourth case review against Dr. Meyer, and Dr. Cooley told Dr. Meyer that he went to ask Dr. Cavelin (a Hospitalist) if there were any cases that he was concerned with involving the Stroke Program.

78.     Dr. Alsharouri referred Dr. Meyer's cases to peer review for the sole purpose of retaliating against Dr. Meyer for making sex-based complaints against him, starting in September 2019.

79.     Defendants peer review process was instigated by Dr. Alshahrouri both directly by filing his own claims and directing others to file other claims against Dr. Meyer. These four (4) referrals instigated by Dr. Alshahrouri led to the Dr. Meyer's suspension from her practice by Defendant Prevea, embarrassing her in front of her colleagues, and making her continue her practice under the on-going threat of being terminated and having her medical license suspended.

80.     Rather than see the sham process initiated by Dr. Alshahrouri, Dr. Kabbani, and their friends for what it was, Defendants condoned this retaliatory conduct by suspending Dr. Meyer from practice on April 16, 2020, less than four (4) months after she filed her internal formal complaint against Dr. Alshahrouri, and after he followed through with his threats to ruin Dr. Meyer's career by putting her medical license in jeopardy through a punitive peer review employment action.

81.     In February 2020, Defendants initiated an "independent" external review of the peer review allegations brought against Dr. Meyer by Drs. Alshahrouri, Kabbani, and their friends. This immediate referral to an external review was in violation of Defendant HSHS St. Vincent's own peer review policy.

82.     Although Defendants do not employ other physicians similar to Dr. Meyer in terms of subspecialty (neurointerventional radiology), they do employ several physicians who are proceduralists. Many of these internal doctors could have appropriately served on a peer review of Dr. Meyer, if one was necessary, rather than the peer review being sent directly out to external review. Instead of this rush to perform an external peer review, there should have been an internal review with Dr. Meyer within her radiology department before her suspension in April 2020.

83.     The outside, reviewing physician was clearly incompetent, unqualified, and outdated as far as his medical understanding of neurointervential radiology, as he was no longer actively practicing medicine between February 2020 and April 2020. Moreover, this first peer reviewer was trained prior to stroke intervention and there is no indication that he ever performed any such interventions. Nevertheless, HSHS St. Vincent did not give Dr. Meyer the ability to share her case narratives on the reviewed cases with this reviewing physician before

they suspended her based on his findings.

84.     As a result of the unqualified, external physician's opinions of Dr. Meyer's cases conducted between February 2020 and April 2020, Dr. Cooley referred the cases to the MEC for review. The MEC consisted of approximately 18 physicians, all of whom, except one, were male at the time of the peer review.  Although Dr. Alsharouri may not have participated in the MEC's decision to suspend Dr. Meyer, his prior statements that he could use the MEC to punish Dr. Meyer establishes that the MEC could be influenced by one its own members, Dr. Alshahrouri, referring this peer review against Dr. Meyer.

85.     On April 16, 2020, Defendants suspended Dr. Meyer.

86.     Defendants suspended Dr. Meyer on April 16, 2020 based on this incompetent report, claiming that she posed a possible imminent risk to patient care at Defendant HSHS St. Vincent. In no way did Defendant HSHS St. Vincent institute this peer review as part of a routine review of a medical staff member's case, but from the start utilized it punitively for corrective action against Dr. Meyer at Dr. Alshahrouri's behest.

87.     Defendants' illegitimate suspension of Dr. Meyer on April 16, 2020 substantially damaged Dr. Meyer's professional standing and reputation at Defendants.

88.     On or about April 16, 2020, Dr. Rai, Defendant Prevea's President, came into Dr. Meyer's office to tell her she was immediately suspended and wrote a letter to her to memorialize her suspension.

89.     Defendants' suspension of Dr. Meyer on April 16, 2020 was unnecessary and inappropriate. If the MEC had given Dr. Meyer the ability to discuss the referred cases, the MEC would have understood that her suspension was not necessary to protect patient care.

90.    For over nine (9) months subsequent to April 2020, Defendants' peer review of Dr. Meyer continued in a retaliatory fashion without any apparent concern about patient care.

91.    In approximately April 2020, Dr. Alshahrouri approached Maida Imsirovic, the practice administrator at Defendant HSHS St. Vincent, to inform her that Dr. Kabbani "was available" to take Dr. Meyer's place and suggested that she hire him to do so.

92.    Only after Defendants' suspension of Dr. Meyer in April 2020 did Dr. Meyer meet with Defendant HSHS St. Vincent's MEC as part of the peer review process on April 28, 2020.

93.    On April 29, 2020, Defendants rescinded Dr. Meyer's suspension.

94.    Although Dr. Meyer was suspended for two (2) weeks, Defendants' damage to her professional reputation continued as she was under the cloud of a punitive peer review for another nine (9) months.

95.    Although Dr. Meyer's suspension was lifted after the MEC finally allowed her to provide full explanations for the reviewed cases, the letter she received on April 28, 2020 from the MEC was inconsistent with what she had been told by MEC and needed to be clarified before Dr. Meyer was willing to return to work.

96.    In April 2020 or May 2020, Dr. Ryan Peirce, President of Green Bay Radiology and President of the MEC at Defendant HSHS St. Vincent, told Dr. Nohara, in no uncertain terms, that the unanimous decision and understanding of the MEC was that the investigation surrounding the four (4) cases reviewed by the external reviewer which led to her suspension was now "completed" and hence the suspension was to be lifted. The way Defendants' April 28, 2020 letter was worded, however, kept the review open with a threat of future corrective action stemming from these same four (4) cases.

97.     Indeed, from April 2020 through January 2021, Defendant HSHS St. Vincent conducted a second sham "peer review" of Dr. Meyer on the same four (4) cases, claiming that another review was warranted because of the unfavorable nature of the first review. However, after considering the first review and Dr. Meyer's response, the MEC unanimously lifted her suspension and thought they had completed their peer review investigation.

98.     In May 2020, Defendants conducted a biased internal retaliation investigation into Dr. McCue's complaint regarding Dr. Meyer's treatment by Defendant Prevea and came to a predetermined and inaccurate conclusion that no retaliation had occurred.

99.     On June 30, 2020, under strong protest and maintaining that the second review was illegitimate because it was based on Drs. Alshahrouri and Kabanni's and their friends original, retaliatory case referrals, Dr. Meyer nevertheless agreed to submit case narratives for the four (4) cases to a second outside reviewer.

100.    From the years 2017 to 2021, Defendants have not subjected any physician to an external review of the same or similar cases twice other than Dr. Meyer.

101.    In July 2020, Dr. Cooley left his employment as Prevea's Chief Physician Executive.

102.    In September 2020, Dr. Meyer was successful in having her Stroke Program at Defendant HSHS St. Vincent receive Comprehensive Stroke Designation by the relevant accrediting association. Dr. Meyer's stroke program is number three (3) in volume in the state, with patient satisfaction scores at the top of the list. All this was accomplished under the worst of circumstances, not only because of Covid-19, but also intense scrutiny, harassment, and retaliation by Defendants.

103.     On December 23, 2020, Dr. Meyer was completely exonerated by Defendant HSHS St. Vincent concerning the four (4) referred cases, by the second, qualified and competent, outside peer reviewer.

104.     On January 18, 2021, Dr. Meyer filed additional complaints with Defendants regarding Dr. Alshahrouri and other sex-based harassing and discriminatory circumstances she continued to suffer. This harassment and inappropriate workplace behavior have been on-going and continues to this day even in the absence of Dr. Alshahrouri and Dr. Kabbani. For instance, male vascular surgeons at HSHS St. Vincent continue to question Dr. Meyer's medical judgment based on the fact that they believe the sham peer review process brought against her establishes that her medical expertise is subject to question and second-guessing.

105.     On January 28, 2021, Defendant Prevea closed their peer review of Dr. Meyer's cases without further action.

106.     Nevertheless, during the year 2021, Defendants subjected Dr. Meyer to additional discrimination in the form of a continuous external peer review process that applies only to her, a female, and not to any other male physicians at Defendants.

107.     Dr. Alshahrouri remained on Defendant HSHS St. Vincent's Board of Directors and on the MEC through January 2021, when he resigned his employment based on another sex discrimination and harassment complaint being brought against him by yet another female physician.

108.     In all, during the years 2019 to 2021, five (5) female physicians complained to Defendants about Dr. Alshahrouri's sexually discriminatory and harassing conduct.

109.     During the years 2019 to 2021, Defendants refused to take appropriate remedial steps given the overwhelming evidence of Dr. Alsharouri's sexual abusive and retaliatory

conduct toward female physicians.

110.     During the years 2019 to 2021, Defendants gave Dr. Alshahrouri special treatment based on his close friendship with Dr. Rai, Prevea's President, and based on his positions at Defendants.

111.     Currently, Dr. Meyer continues to be retaliated against by other male doctors at Defendants, as part of its misogynistic, "Boys Club" culture. These male doctors utilize the existence of the sham peer review process brought against Dr. Meyer to question her medical opinions and to undermine her authority at Defendants. Numerous female physicians, like Dr. Meyer, are treated like second-class citizens in comparison to their male colleagues. More female physicians after Dr. Meyer came forward to make allegations of sex-based harassing and discriminatory conduct by Dr. Alshahrouri before he ultimately resigned his employment with Defendants.

**Dr. Meyer's Claims of Discrimination, Harassment, and Retaliation Against Defendants**

112.     On July 6, 2020, Dr. Meyer filed complaints with the Wisconsin Department of Workforce Development – Equal Rights Division ("ERD"), designated ERD Case Nos. CR202001563 and CR202001564, which were also cross-filed with the Equal Employment Opportunity Commission – Milwaukee Area Office ("EEOC"), designated as EEOC Charge Nos. 26G202000933C and 26G202000937C (hereinafter simply "ERD Case Nos. CR202001563 and CR202001564"), alleging that Defendants discriminated against her on the basis of her sex, permitted sexual harassment against her, and that they retaliated against her for opposing discrimination in the workplace.

113.     After filing ERD Case Nos. CR202001563 and CR202001564, Defendants continued to retaliate against Dr. Meyer by subjecting her to a secretive and punitive peer review

processes based on illegitimate and retaliatory case review instigated by Dr. Alshahrouri, and by failing to respond in an adequate manner to an additional Human Resources complaint she filed with Defendants on January 18, 2021.

114.    On February 2, 2021, the ERD issued Dr. Meyer Initial Determinations of "Probable Cause" on ERD Case Nos. CR202001563 and CR202001564, stating that there was probable cause to believe that Defendants: (1) engaged in or permitted sexual harassment; (2) discriminated against Dr. Meyer in the terms and conditions of her employment because of sex; and (3) retaliated against Dr. Meyer because she opposed discrimination in the workplace.

115.    The EEOC issued Dr. Meyer Notices of Right to Sue on Charge Nos. 26G202000936C and 26G202000937C, dated September 22, 2021.

116.    Dr. Meyer has exhausted all administrative remedies and filing requirements prior to bringing this action and has filed this Complaint within ninety (90) days of the Right to Sue Letters.

## FIRST CAUSE OF ACTION – SEX DISCRIMINATION

117.    Dr. Meyer re-alleges and incorporates the aforementioned paragraphs of this Complaint by reference.

118.    Defendant Prevea is an "employer" within the definition of §701(b) of Title VII of the Civil Rights Act of 1964 [42 U.S.C. §2000e(b)].

119.    Defendant HSHS St. Vincent is an "employer" within the definition of §701(b) of Title VII of the Civil Rights Act of 1964 [42 U.S.C. §2000e(b)].

120.    Dr. Meyer is an "employee" within the definition of §701(f) of Title VII of the Civil Rights Act of 1964 [42 U.S.C. §2000e(f)].

121.    Title VII of the Civil Rights Act of 1964, as amended, makes it unlawful for an employer "(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate

against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)

122.     Defendants intentionally discriminated against Dr. Meyer on the basis of her sex (female) in the terms and conditions of her employment by allowing her to be continuously subjected to sexually discriminatory conduct by Dr. Alsharouri and Dr. Kabbani, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq*., and in reckless indifference to her federally protected rights.

123.     Alternatively, Title VII prohibits sexual discrimination by third parties. Federal regulations explicitly state that "an employer may . . .be held responsible for the acts of non-employees [under Title VII] where the employer (or its agents or supervisory employees) knows or should have known of the conduct and fails to take immediate and appropriate corrective action." 29 C.F.R. § 1604.11.

124.     Defendant Prevea is liable under Title VII for third-party discrimination of Dr. Meyer by Defendant HSHS St. Vincent on the basis of her sex (female), in the terms and conditions of her employment, by allowing her to be continuously subjected to sexually discriminatory peer review processes and other sexually discriminatory conduct, and by failing to take immediate and appropriate corrective action.

125.     Dr. Meyer's sex was the determining factor and/or a motivating factor in Defendants' adverse employment actions against her.

126.    As a direct, legal, and proximate result of Defendants' sex discrimination, Dr. Meyer has suffered damages in the form of lost wages, lost benefits, pain and suffering, emotional distress, and other employment benefits, in an amount to be proven at trial.

127.    Defendants' unlawful actions were intentional, willful, malicious, and/or done with reckless disregard to Dr. Meyer's right to be free from discrimination based on sex.

**SECOND CAUSE OF ACTION – HOSTILE ENVIRONMENT SEXUAL HARASSMENT**

128.    Dr. Meyer re-alleges and incorporates the aforementioned paragraphs of this Complaint by reference.

129.    Defendants subjected Dr. Meyer to unwelcome conduct by permitting Dr. Alsharouri and Dr. Kabbani to sexually harass her through unwanted physical contact and touching, sex-based epithets, and other forms of sex-based, harassing comments, conduct, and behavior.

130.    The conduct by Dr. Alshahrouri and Dr. Kabbani as described within this Complaint was severe and pervasive and created an objectively hostile and/or abusive work environment. On a regular, and sometimes daily, basis, Plaintiff was subjected to unwanted physical touching, sex-based epithets, and other sexual harassing comments, conduct, and behaviors by Dr. Alshahrouri and Dr. Kabbani and with Defendants knowledge.

131.    During Dr. Meyer's employment with Defendants, her multiple complaints to Defendants' supervisory employees, using the appropriate preventative internal complaint procedure, did not cause Defendants to take appropriate corrective remedial action against either Dr. Alshahrouri or Dr. Kabbani.

132.    Defendants' actions in relation to Dr. Alshahrouri's and Dr. Kabbani's sexual harassment of Plaintiff had the purpose or effect of unreasonably interfering with Dr. Meyer's

work performance and creating an intimidating, hostile or offensive working environment.

133.     An objectively reasonable person in Dr. Meyer's position would have found the work environment to be hostile and polluted by sex discrimination.

134.     Defendants' management level employees knew, or should have known, of Dr. Alshahrouri's and Dr. Kabbani's sexually harassing comments, conduct, and behavior towards Dr. Meyer during her employment with Defendants.

135.     Defendants did not exercise reasonable care to prevent the creation of a hostile work environment charged with sexual harassment and did not exercise reasonable care in taking appropriate corrective remedial actions against Dr. Alshahrouri and Dr. Kabbani sexual harassment of Dr. Meyer, even after Dr. Meyer's repeated complaints to Defendants regarding same.

136.     Alternatively, Defendant HSHS St. Vincent had a duty to remedy abusive conditions and/or sexual harassment created by Dr. Alshahrouri and Dr. Kabbani against or towards Dr. Meyer.

137.     Under 29 C.F.R. §1604.11(e), Defendant HSHS St. Vincent is liable for sexual harassment perpetrated by nonemployees "in the workplace, where the employer . . . knows or should have known of the conduct and fails to take immediate and appropriate corrective action."

138.     Defendant HSHS St. Vincent is liable for the sexual harassment perpetrated by Dr. Alshahrouri and Dr. Kabbani in its workplace against Dr. Meyer, as third-parties, because Defendant HSHS St. Vincent knew or should have known about Dr. Alsharouri's and Dr. Kabanni's sexually harassing comments, conduct, and behavior towards Dr. Meyer, and Defendant HSHS St. Vincent failed to take immediate and appropriate corrective actions to deter, correct, or remedy the abusive conditions and/or sexual harassment created by Dr.

Alshahrouri and Dr. Kabbani against or towards Dr. Meyer.

139.    As a direct, legal, and proximate result of this unlawful hostile environment sexual harassment by Defendants, Dr. Meyer has suffered damages in the form of lost wages, lost benefits, pain and suffering, emotional distress, and other employment benefits, in an amount to be proven at trial.

140.    Defendants' unlawful actions were intentional, willful, malicious, and/or done with reckless disregard to Dr. Meyer's right to be free from harassment based on sex.

### THIRD CAUSE OF ACTION – RETALIATION (OPPOSITION)

141.    Dr. Meyer re-alleges and incorporates the aforementioned paragraphs of this Complaint by reference.

142.    Section 704(a) of Title VII of the Civil Rights Act of 1964, as amended, prohibits employers from discriminating against an employee "because [she] has opposed any practice made an unlawful employment practice by this subchapter." 42 U.S.C. § 2000e-3(a)

143.    Defendants intentionally retaliated against Dr. Meyer for opposing sex discrimination in the workplace by retaliating against her in the terms and conditions of her employment, by subjecting her to consecutive sham peer reviews to discredit her and undermine her professional reputation, and by continuing to subject her to unfavorable and unequal treatment compared to similarly situated male physicians either employed by, or on the medical staff of, Defendants, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*, and in reckless indifference to her federally protected rights.

144.    Defendants', their agents' and/or employees' retaliatory actions would deter a reasonable employee from engaging in protected activity under Title VII.

145.    As a result of Defendants' unlawful retaliation, Dr. Meyer suffered damages in the

form of lost wages, lost benefits, pain and suffering, emotional distress, and other employment benefits, in an amount to be proven at trial.

146. Defendants' unlawful actions were intentional, willful, malicious, and/or done with reckless disregard to Dr. Meyer's right to be free from harassment based on sex.

## FOURTH CAUSE OF ACTION – RETALIATION (PARTICIPATION)

147. Dr. Meyer re-alleges and incorporates the aforementioned paragraphs of this complaint by reference.

148. Section 704(a) of Title VII of the Civil Rights Act of 1964, as amended, also prohibits employers from discriminating against an employee "because [she] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a).

149. Defendants intentionally discriminated against Dr. Meyer for filing ERD Case Nos. CR202001563 and CR202001564 by retaliating against her in the terms and conditions of her employment, by subjecting her to a second sham peer review to discredit her and undermine her professional reputation, and by continuing to subject her to unfavorable and unequal treatment compared to similarly situated male physicians either employed by, or on the medical staff of, Defendants, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq*., and in reckless indifference to her federally protected rights.

150. Defendants', their agents' and/or employees' retaliatory actions would deter a reasonable employee from engaging in protected activity under Title VII.

151. As a result of Defendant's intentional discrimination and retaliation, Dr. Meyer suffered damages in the form of lost wages, lost benefits, pain and suffering, emotional distress, and other employment benefits, in an amount to be proven at trial.

152.    Defendants' unlawful actions were intentional, willful, malicious, and/or done with reckless disregard to Dr. Meyer's right to be free from harassment based on sex.

**WHEREFORE**, Plaintiff respectfully requests that this Court:

1.  Order Defendants to make Plaintiff whole by providing appropriate back pay and/or lost wages and employment-related benefits and/or expenses, compensatory damages, punitive damages, pre-judgment and post-judgment interest, and reimbursement for any other benefits and expenses in an amount to be shown at trial;

2.  Grant to Plaintiff attorneys' fees, costs, and disbursements as provided by statute;

3.  Order Defendants to institute and carry out policies, practices, and programs which provide equal employment opportunities for employees who exercise their federally protected rights to complain about discrimination and harassment, and which eradicate the effects of its past unlawful employment practices;

4.  Order Defendants to provide training to its officers, managers and employees regarding discriminatory harassment and retaliation in the workplace;

5.  Grant a permanent injunction enjoining Defendants, its officers, successors, assigns and all persons in active concert or participation with it, from engaging in any employment practice which retaliates against employees who complain about discrimination or harassment; and

6.  Grant to Plaintiff whatever other relief this Court deems just and equitable.

**PLAINTIFF DEMANDS A JURY AS TO ALL TRIABLE ISSUES**

Dated this 18th day of October, 2021

WALCHESKE & LUZI, LLC
Counsel for Plaintiff

**s/ _Scott S. Luzi_** 
James A. Walcheske, State Bar No. 1065635
Scott S. Luzi, State Bar No. 1067405
Paul M. Secunda, State Bar No. 1074127

WALCHESKE & LUZI, LLC
235 N. Executive Drive, Suite 240
Brookfield, Wisconsin 53005
Telephone: (262) 780-1953
Fax: (262) 565-6469
Email: jwalcheske@walcheskeluzi.com
Email: sluzi@walcheskeluzi.com
Email: psecunda@walcheskeluzi.com